UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALFRED TREADWELL                                    CIVIL ACTION

VERSUS                                              NO. 13-5889

ST. TAMMANY PARISH JAIL ET AL.                      SECTION "C"(2)

## REPORT AND RECOMMENDATION

Plaintiff, Alfred Treadwell, is a prisoner currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the St. Tammany Parish Jail, its Warden Gregory Longino, St. Tammany Parish Sheriff Rodney J. Strain, Jr. and Dr. R. Demaree Inglese, who provides medical care at the St. Tammany Jail.

Treadwell asserts that he was denied adequate medical care while incarcerated in the St. Tammany Parish Jail from August 25, 2010, through January 23, 2012. Specifically, he claims that (1) on October 30, 2010, he was negligently dropped from a medical examination table, causing physical injuries; (2) he was given medications that caused an "almost fatal" reaction; (3) he was placed in administrative segregation for requesting medical attention when his condition worsened; (4) he was forced to take another inmate's prescription medication; and (5) an unknown medication prescribed to him by Dr. Inglese caused him to suffer various medical problems.  He seeks $1,000,000 for pain, suffering and mental anguish and $500,000 in punitive damages. Record Doc. No. 3, pp. 7-10. (Complaint at ¶s I, IV and V).

On November 7, 2013, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Gary Hanes, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During the November 7, 2013, Spears hearing, Treadwell testified that he is currently incarcerated at Angola based upon his February 8, 2011, conviction for distribution of cocaine. He stated that he is serving a 15-year prison sentence.

Treadwell confirmed that he was incarcerated as a pre-trial detainee in the St. Tammany Parish Jail upon his arrest on August 25, 2010, until his January 23, 2012 transfer to the Elayn Hunt Correctional Center ("Hunt") after his conviction. Treadwell stated that after his initial transfer to Hunt, he was temporarily transferred to Tallulah, Louisiana, then transferred back to Hunt before his final transfer to Angola. Treadwell also confirmed that all claims he makes in this lawsuit relate exclusively to incidents that occurred while he was incarcerated in the St. Tammany Parish Jail between August 25, 2010 through January 23, 2012.

Treadwell admitted under oath that he signed and dated the captioned lawsuit on September 18, 2013, almost 15 months after he left the St. Tammany Parish Jail. Record Doc. No. 3, Form Complaint at p. 5; "Memorandum in Support of § 1983" at p. 6; Record Doc. No. 1, Motion to Proceed In Forma Pauperis at p. 1. When asked why he waited so

long to file this lawsuit, Treadwell stated that when he was transferred from Hunt to Tallulah, he left the paperwork concerning his case at Hunt and had to "refile again" when he returned to Hunt. Treadwell stated that during his first period of incarceration at Hunt, he let an unnamed attorney "look over" paperwork concerning his case, but following his transfer his paperwork was not returned to him.

Treadwell confirmed that in the instant case he claims: (1) St. Tammany Parish Jail personnel were negligent on October 30, 2010, when they dropped him from the examination table to the floor during a medical examination; (2) he received inadequate medical care while in the St. Tammany Parish Jail; and (3) he was wrongfully disciplined by St. Tammany Parish Jail personnel by being placed in administrative segregation for his refusal to take medication.

Treadwell stated that he had received and reviewed a copy of his medical records that defendants previously produced in response to my order, Record Doc. Nos. 6 and 17, and that they are substantially accurate.  He testified that "when I first got there, I asked to see a doctor to get some pain medicine . . . . They started treating me but they gave me the medicine they wanted to give me, and I told them I was allergic to it, but they said I got to take it anyway."

Treadwell confirmed the numerous references throughout his medical records that while in the St. Tammany Parish Jail, he was prescribed a variety of medications for all kinds of ailments, including neck and back pain, headaches, a bloody nose, muscle

spasms, dental problems, dizziness and high blood pressure.  He confirmed that while in the jail he was given penicillin, Flexeril, Tylenol, lisinopril, ultram, and amoxicillin. He complained, "I told them I couldn't take nothing but penicillin and they put me on all this other different stuff." He also stated that when he was initially prescribed amoxicillin, he informed St. Tammany Parish Jail personnel that he was allergic to it, but that personnel told him "nobody's allergic to it, and I got to take it."

When asked what conditions he was treated for at the jail, Treadwell stated that he was suffering from a pre-existing back injury and a "messed up" ankle. When asked why he was taking antibiotics, he stated, "That's something they gave me. I told them I wanted penicillin if they gonna give me anything. . . but that was what they wanted to give me."

Asked to identify his specific complaint about his medical care, he stated, "They prolonged giving me this medication and it's breaking me out. . . with boils popping up all over my body, and I told them I was allergic to the medication and they said 'no, that ain't the medication, that's something else,' and I broke out from head to toe." Treadwell testified that during February 2011, he went to the nurse almost every day for this condition.

Treadwell confirmed that when medical personnel at the jail determined that he might be allergic to Tylenol, he was prescribed bactrim instead. He complained that this medication also caused him to "break out" and said, "I told them I'm allergic to that

different stuff and they made me take it, and they told me that if I don't take it, they gonna lock me down. So then they lock me down and strip me naked... and told me I gotta take this medication, and then it get worse."

Treadwell confirmed that he was on suicide watch for a short time because he refused to take his medication, but stated that he refused to take his medication because he was allergic to it. Treadwell also confirmed that during 2011, before his transfer to Hunt on January 23, 2012, he was put in administrative segregation for refusing to take his medication several times. He said that St. Tammany Parish Jail personnel told him, "if I take my medicine, they'll release me." When asked how long he was held in administrative segregation, he estimated three to four days or "something like that - I don't remember how long it was - it was several times."

Treadwell's verified medical records establish that while incarcerated in the St. Tammany Parish Jail, he was examined and/or treated by a physician about 18 times for various medical conditions, including neck and back pain, high blood pressure, general discomfort, oral abscesses, chest pain, anxiety, rashes, a swollen stomach, allergies, penile discharge, bloody urine, leg pain, hives, numbness and ankle pain. His blood pressure was checked numerous times, he was observed overnight on multiple occasions, he received a urine test, and he was prescribed penicillin, flexeril (for muscle spasms), amoxicillin, Tylenol, lisinopril (for high blood pressure), ultram (for pain), nasal spray, benadryl, solu-medrol (for inflammation), bactrim (for hives), rifampin (for hives),

5

clindomycin (for hives), Tetracycline (for hives), and milk of magnesia (for a "swollen stomach"). Treadwell also was seen by nurses at the jail about 23 times for the same various medical complaints.

The verified medical records also reflect the opinion of medical personnel that Treadwell was malingering. On December 1, 2010, nurse Manesak noted that Treadwell was "seen multiple times" and questioned whether he was "[s]eeking medication? Seeking financial gain for injuries? Staging injuries - malingering." On December 20, 2010, Dr. Inglese reported "Treadwell's history of malingering and faking illnesses. . . including the 'faked fall' on October 30, 2010." As to his fall from the examination table on October 30, 2010, an attending nurse's notes state: "As we shift inmate from exam table inmate pretends to fall."

At the conclusion of Treadwell's November 7th testimony, defense counsel stated that Treadwell had filed a previous lawsuit "remarkably like this one" in this court, C.A. No. 11-2096. Treadwell acknowledged that he had filed the earlier lawsuit involving similar complaints.[1] The defendants in Treadwell's previous lawsuit were the Louisiana Department of Public Safety and Corrections ("DOC"), the St. Tammany Parish Sheriff's

---

[1] The current lawsuit is not duplicative or malicious for purposes of 28 U.S.C. §1915(e)(2)(B)(i), because Treadwell's previous lawsuit was dismissed without prejudice as to the defendants in the current lawsuit, when Treadwell's transfer to Hunt effectively provided him with the only relief requested in the previous lawsuit, rendering it moot and depriving this court of jurisdiction. C.A. No. 11-2096 "S"(1), Record Doc. No. 16.

Office, and the three individual defendants named in the captioned matter, Strain, Longino and Inglese.

As in the current complaint, Treadwell's earlier suit claimed that he had been denied adequate medical care while incarcerated in the St. Tammany Parish Jail after the October 30, 2010 incident. Unlike the current lawsuit, however, which seeks monetary damages, the exclusive relief Treadwell sought in the earlier lawsuit was an immediate transfer away from the St. Tammany Parish Jail to a DOC facility. C.A. No. 11-2096 "S"(1), Record Doc. No. 1, p. 5. (Complaint at ¶ IV and V). On September 27, 2011, the court dismissed all claims against the DOC and the St. Tammany Parish Sheriff's Office with prejudice as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking relief from a defendant who is immune. C.A. No. 11-2096 "S"(1), Record Doc. No. 6, p. 1. On January 23, 2012, after Treadwell had been transferred from the St. Tammany Parish Jail into DOC custody at Hunt, C.A. No. 11-2096 "S"(1), Record Doc. No. 16, p. 2, the court granted defendant's  motion to dismiss with<u>out</u> prejudice because the transfer to Hunt had provided Treadwell with the exclusive relief he had requested, rendering the previous lawsuit moot. <u>Id</u>. at p. 3. Treadwell's subsequent appeal,  C.A. No. 11-2096 "S"(1), Record Doc. No. 21, was dismissed on September 13, 2013, for want of prosecution when he failed timely to file a brief.  C.A. No. 11-2096 "S"(1), Record Doc. No. 25, p. 1.

After the Spears hearing, the court received additional written submissions from plaintiff, in which he alleges that he now is not receiving adequate medical care for "headaches, nose bleed, and those boils" Louisiana State Penitentiary personnel, Record Doc. Nos. 19 and 20, none of whom are defendants in this case.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions

are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97

(5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of

a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal

claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing,

Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d

318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as

long as they are properly identified, authentic and reliable.  "The Court should allow

proper cross-examination and should require that the parties properly identify and

authenticate documents.  A defendant may not use medical records to refute a plaintiff's

testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v.

9

<u>Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading,[2] because all of his claims concerning medical care at the St. Tammany Parish Jail from August 2010 to January 23, 2012, when he was transferred, are barred by the applicable one-year statute of limitations.

## II.   PRESCRIPTION

The district court may raise the limitations issue sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915. <u>Wilke v. Meyer</u>, 345 F. App'x 944, 945 (5th Cir. 2009); <u>Lopez-Vences v. Payne</u>, 74 F. App'x 398, 2003 WL 22047325, at *1 (5th Cir. 2003) (citing <u>Gartrell v. Gaylor</u>, 981 F.2d 254, 256 (5th Cir. 1993)). "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" <u>Stanley v. Foster</u>, 464 F.3d 565, 568 (5th Cir. 2006) (quoting <u>Harris</u>, 198 F.3d at 156).

Treadwell's written submissions and oral testimony allege clear dates on which the various incidents upon which he bases his claims occurred. Specifically, he alleges that all incidents occurred during his incarceration in the St. Tammany Parish Jail from

---

[2]The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

August 25, 2010, through January 23, 2012, when he left the jail and was transferred to another facility. Under the applicable mailbox rule, his current lawsuit is deemed filed in this court on September 18, 2013, more than 20 months later.

Although Section 1983 has no statute of limitations, the one-year Louisiana prescription statute, Louisiana Civil Code article 3492, applies to suits brought in federal court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.

Duplessis v. City of New Orleans, No. 08-5149, 2009 WL 3460269, at *4 (E.D. La. Oct. 26, 2009) (McNamara, J.) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Moore, 30 F.3d at 620; Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)); accord James v. Branch, No. 07-7614, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009) (Duval, J.) (citations omitted).

Federal law determines when a Section 1983 claim accrues. Jacobsen, 133 F.3d at 319.

> For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief."

Duplessis, 2009 WL 3460269, at *5 (quoting Wallace, 549 U.S. at 388) (citing Jacobsen, 133 F.3d at 319; Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998)); accord Dixon v. Cooper, 260 F. App'x 728, 729 (5th Cir. 2007); Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995).  Determination of when plaintiff knew or should have known of the existence of a possible cause of action has two factors: "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions."  Id.; accord Dixon, 260 F. App'x at 729.  In the instant case, as a participant in the incidents about which he complains, occurring from August 2010 until  January 2012, there is no question that Treadwell knew about his injuries when they occurred.

The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints.  Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987).  However, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the prisoner for delivery to the court is considered the time of filing for limitations purposes.  United States v. Petty, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); Stevenson v. Anderson, 139 F. App'x 603, 604 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).

In this case, the earliest date on which prison officials could have received Treadwell's complaint for delivery to this court is September 18, 2013, when he signed

13

and dated his motion to proceed in forma pauperis, complaint and its attachments. Record Doc. No. 1 at p. 1 and No. 3 at p. 5.[3]  Plaintiff's complaint is therefore considered filed and this action commenced on September 18, 2013 for limitations purposes under the mailbox rule.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law.  Lopez-Vences, 74 F. App'x at 398; Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Gartrell, 981 F.2d at 257.  The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem.  Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run:  (1) if there was some legal cause that prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding that prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action, and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.  Dominion Explor. & Prod. Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4th Cir. 2007)

---

[3]Treadwell's motion for leave to proceed in forma pauperis was tendered to the clerk of court for filing in this court on September 19, 2013. His complaint was formally filed on September 25, 2013, after the court granted plaintiff's motion for leave to proceed in forma pauperis. Record Doc. Nos. 1, 2 and 3.

(citing <u>Wimberly v. Gatch</u>, 635 So. 2d 206, 211 (La. 1994); <u>Plaquemines Parish</u>
<u>Comm'n Council v. Delta Dev. Co.</u>, 502 So. 2d 1034, 1054-55 (La. 1987)). Thus, the
"doctrine of contra non valentem recognizes that in limited circumstances prescription
should not run if good cause exists as to why plaintiff would have been unable to
exercise or was lulled into not exercising a cause of action when it first became
exigible." <u>Pracht v. City of Shreveport</u>, 830 So. 2d 546, 551 (La. App. 2d Cir. 2002).

In addition, the period during which an earlier suit was pending, and the manner
and circumstances under which it was dismissed, must also be evaluated in determining
whether a subsequent suit is prescribed. La. Civ. Code art. 3463 provides:

> An interruption of prescription resulting from the filing of a suit in a
> competent court and in the proper venue or from service of process within
> the prescriptive period continues as long as the suit is pending.
> <u>Interruption is considered never to have occurred</u> if the plaintiff abandons,
> voluntarily dismisses the action at any time either before the defendant has
> made any appearance of record or thereafter, <u>or fails to prosecute</u> the suit
> at the trial.

Emphasis added.

In this case, Treadwell's complaint is deemed filed under the mailbox rule
applicable to prisoner complaints on September 18, 2013. Accordingly, the one-year
prescriptive period applicable to Section 1983 claims bars all claims about which
Treadwell knew or had reason to know of his injuries before September 18, 2012, one
year before the filing date. All of Treadwell's claims in his complaint in this case
involve alleged physical injuries and inadequate medical care suffered no later than

15

January 23, 2012, when he left the St. Tammany Parish Jail. As a participant in the alleged incidents, Treadwell clearly knew about his injuries and medical care at the time they occurred, and well before the prescriptive period lapsed.

Treadwell has provided no reason, and I can conceive of no basis on which, the doctrine of contra non valentem or equitable tolling might apply. For example, there is no legal cause that prevented the courts from taking cognizance of or acting on Treadwell's action; there is no condition coupled with the connected proceeding that prevented plaintiff from acting in a timely manner; defendants did nothing to prevent Treadwell from availing himself of his cause of action; and the cause of action was known or reasonably knowable to him.

Finally, Treadwell's prior suit did <u>not</u> interrupt the one-year prescriptive period in a manner that sufficiently interrupted the prescription bar to his filing of the current suit. Interruption of prescription arising from a pending suit "ends only at the time of the judgment of dismissal." <u>Bank of New York Mellon v. Smith</u>, 71 So.3d 1034, 1050 (La. App. 3d Cir. 8/24/11) (<u>citing</u> <u>Dark v. Marshall</u>, 945 So.2d 246, 250 (La. App. 2nd Cir. 12/13/16). Under La. Civ. Code Art. 3463, the interruption of the prescriptive period ends and prescription begins to run anew from the date of an involuntary dismissal of the case. <u>Smith</u>, 71 So.2d at 1050, 1052 (internal citation omitted).

Treadwell timely filed his prior suit on August 29, 2011, interrupting prescription until the April 4, 2012, judgment of dismissal, which caused the one-year prescriptive

period to run anew from the date of the judgment.  After dismissal, plaintiff filed a timely notice of appeal, which might have continued the interruption of prescription under Article 3463.  However, on September 19, 2013, the appeal was dismissed by the Fifth Circuit for want of prosecution. La. Civ. Code. Art. 3463 states that "[i]nterruption is considered never to have occurred if the plaintiff . . . fails to prosecute the suit . . . ." As the Louisiana Court of Appeal explained in McCallon, if a plaintiff fails to prosecute his claim, the "action legally never occurred and prescription was not interrupted." McCallon v. Travelers Insurance Company, 302 So.2d 676, 680, (La. App. 3d Cir. 11/20/74).  Therefore, Treadwell's appeal failed to continue to interrupt prescription, and the prescription period for filing this suit began to run again on April 5, 2012. It lapsed one year later, on April 5, 2013, after the judgment of dismissal of his prior suit. Consequently, his complaint in this case, deemed filed under the mailbox rule on September 18, 2013, is time-barred.

Under these circumstances involving matters about which Treadwell obviously was aware at the times they occurred from August 25, 2010 through January 23, 2012, all of his claims are barred by the applicable one-year statute of limitations. If Treadwell now seeks to assert claims concerning his medical care at the Louisiana State Penitentiary in Angola, Louisiana, beginning upon his transfer to that facility, he must pursue those claims in a separate lawsuit filed in the Middle District of Louisiana, were venue may be appropriate.

**RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ___16th___ day of December, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

18